

**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: November 30, 2023**

The Order of the Court is set forth below. The docket reflects the date entered.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: STEVEN A. TODD<br>PATRICIA A. TODD | CASE NO. 16-51594-KMS |
| DEBTORS | CHAPTER 13 |
| STEVEN A. TODD and<br>PATRICIA A. TODD | PLAINTIFFS |
| V. | ADV. PROC. NO. 23-06010-KMS |
| STEVEN QUIN M.D. and<br>RADIOLOGY ASSOCIATES PA | DEFENDANTS |
| DAVID RAWLINGS, TRUSTEE | INTERVENOR |

### OPINION AND ORDER
### DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
### GRANTING SUMMARY JUDGMENT TO PLAINTIFFS

Debtors Steven and Patricia Todd seek a declaratory judgment on two questions central to their pending medical malpractice lawsuit ("Lawsuit") against Defendants Steven Quin M.D. and Radiology Associates PA: First, whether the Todds sufficiently disclosed their state law cause of action in their amended bankruptcy schedules; and second, whether the cause of action, and therefore the Lawsuit, was abandoned as an asset of the bankruptcy estate.

On Defendants' Motion for Summary Judgment, Adv. ECF No. 30, this Court holds that the Todds' disclosure was sufficient and that, as a result, the Lawsuit was abandoned as an asset

of the bankruptcy estate. The Motion for Summary Judgment is therefore denied, and summary judgment is granted sua sponte to the Todds.

## JURISDICTION

A proceeding to determine the sufficiency of a debtor's disclosures in bankruptcy is core. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987) (discussing 28 U.S.C. § 157(b)(1)); *see also In re Adams*, 481 B.R. 854, 856 (N.D. Miss. 2012) ("[T]he question of whether Adams' state law cause of action should be disclosed . . . is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (E), and (O)."). This proceeding is core also because a ruling on the sufficiency of the Todds' disclosure implicates whether this Court's Final Decree/Order Closing Case, Case ECF No. 146, effected an abandonment of the Lawsuit as an asset of the bankruptcy estate. "[T]he Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable here by Fed. R. Bankr. P. 7056). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the non-moving party." *Ginsberg 1985 Real Estate P'ship v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).

The moving party bears the initial responsibility of apprising the court of the basis for its motion and the parts of the record that indicate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party presents the . . . court

with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

It is well-established that a court may grant summary judgment sua sponte for a nonmovant "so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex*, 477 U.S. at 326; Fed. R. Civ. P. 56(f)(1) (conditioning judgment independent of motion on court's "giving notice and a reasonable time to respond"). Awarding summary judgment to the nonmovant is proper when "there is no genuine issue of material fact and . . . the opposing party has had a full opportunity to (a) brief the legal issues and (b) develop a record." *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 396 (5th Cir. 2006). Here, the Court invited motions for summary judgment during a status conference at which all parties were represented. Adv. ECF No. 24. The Motion for Summary Judgment was fully briefed. And all material facts are before the Court, including the Trustee's responses to discovery that Quin and Radiology Associates propounded. The Todds are entitled to judgment as a matter of law, and summary judgment is properly granted.

## UNDISPUTED FACTS

The Lawsuit alleges these facts: On September 23, 2016, Quin administered an epidural steroid injection to Steven Todd, after which Todd "experienced bilateral weakness and numbness of his lower extremities." Adv. ECF No. 7 at 2. Less than a month later, a different doctor diagnosed Todd with painful, disabling, and permanent injuries caused by or contributed to by Quin's and Radiology Associates' "negligence, breach of contract, and deviations from the minimally accepted standard of care." *Id.* Todd spent nearly $125,000 during the two years between the alleged injury and the filing of the Lawsuit, and he expects to incur more treatment

3

costs in the future. *Id.* The actions and failures of Quin and Radiology Associates also caused Patricia Todd to suffer a loss of consortium and the loss of Steven's society and companionship. *Id.* at 2-3.

The Todds' bankruptcy case was already pending when Steven received the injection. *See* Case ECF No. 1. Approximately six weeks after he was diagnosed with the injuries, the Todds filed an amended "Schedule A/B: Property" in which they disclosed a "contingent post petition medical malpractice case. Represented by Daniel Singer, Shamers, Johnson, Bergman, Attorneys at Law, Kansas City MO (1-816-474-0004)." Case ECF No. 61 at 6. They listed its value as "unknown." *Id.* At the same time, the Todds also filed an amended "Schedule C: The Property You Claim as Exempt" in which they listed, with the same description as in the amended Schedule A/B, a $20,000 exemption under section 85-3-17 of the Mississippi Code, which provides for an up-to-$10,000-per-person exemption in a personal injury judgment. Case ECF No. 61 at 9. Approximately two months later, in January 2017, the chapter 13 plan was confirmed. Case ECF No. 74.

Another twenty months passed. In September 2018, the Todds filed the Lawsuit, in which they were represented by Mississippi counsel, not the Missouri counsel identified in the schedules. *See* Adv. ECF No. 7 at 4. In May 2019, they filed a second amended Schedule C, which increased the exemption claimed in their homestead. Case ECF No. 119 at 1. This Schedule C carried over in identical wording the judgment exemption in the "contingent post petition medical malpractice case" claimed in the first amended Schedule C. *Id.* at 3.

In July 2021, almost three years after they filed the Lawsuit, the Todds received their bankruptcy discharge. Case ECF No. 143. The Trustee filed his Final Report and Account, certifying that the estate had been fully administered. Case ECF No. 145 at 4.

4

The Trustee knew about the medical malpractice cause of action from the time the Todds filed the amended Schedule A/B and the first amended Schedule C. *See* Tr.'s Resp. to Interrog. No. 4, Adv. ECF No. 30-1 at 2 (stating that case administrator "noted the receipt of the Debtor's Amended Schedule B to add a medical malpractice lawsuit" and that Amended Schedule C was part of the same document on the bankruptcy docket). But he did not know about the Lawsuit when he filed the Final Report and Account. *See* Tr.'s Resp. to Interrog. No. 1, Adv. ECF No. 30-1 at 1.

In September 2021, finding that the estate had been fully administered, this Court closed the bankruptcy case. Case ECF No. 146. Eighteen months later, Quin and Radiology Associates moved the state court for summary judgment on the ground of judicial estoppel, arguing that the Todds did not disclose the Lawsuit in the bankruptcy case.

In response, in March 2023, the Todds successfully moved this Court to reopen the bankruptcy case to either "obtain a referral [of the Lawsuit] by agreement from state court" or file an adversary proceeding that would determine (1) whether they properly scheduled the medical malpractice cause of action and (2) whether the cause of action was administered and abandoned on the closure of the case. Am. Mot., Case ECF No. 151 at 3. Only then, shortly before the motion to reopen, did the Trustee learn about the Lawsuit. Tr.'s Resp. to Interrog. No. 1, Adv. ECF No. 30-1 at 1.

The Todds removed the Lawsuit to the United States District Court for the Southern District of Mississippi.[1] And they filed the declaratory judgment Complaint in this Court. Adv. ECF No. 1. The Trustee intervened, asserting that "any judgment or settlement in excess of the exempted $20,000 is property of the Bankruptcy Estate." Adv. ECF No. 19 at 2.

---

[1] The removed Lawsuit is now pending in this Court, referred by the district court with Quin's and Radiology Associates' motion to remand. *See Todd v. Quin*, Adv. No. 23-06018-KMS (Bankr. S.D. Miss. filed July 21, 2023).

## CONCLUSIONS OF LAW

Quin and Radiology Associates argue that the Todds' failure to amend their schedules to add the Lawsuit means they failed to disclose their claim. Adv. ECF No. 31 at 5. It follows, they argue, that the Lawsuit remains property of the estate. *Id.* Both arguments fail.

### I. The Todds Met the Disclosure Requirement.

With exceptions not relevant here, filing a bankruptcy petition creates "an estate" that comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This provision brings into the estate all prepetition causes of action. *See Lawrence v. Jackson Mack Sales, Inc.*, 837 F. Supp. 771, 779 (S.D. Miss. 1992) ("Courts have uniformly held that the phrase 'legal or equitable interests' encompasses causes of action."). In a chapter 13 case, property of the estate also includes "all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under [another chapter of the Code], whichever occurs first." 11 U.S.C. § 1306(a)(1). Consequently, the chapter 13 estate includes postpetition causes of action as well.

"[Fifth Circuit] precedent is clear: Chapter 13 debtors must disclose post-petition causes of action." *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 766 F. App'x 38, 42 (5th Cir. 2019) (collecting cases). When the Todds amended their Schedule A/B to show a "contingent post petition medical malpractice case," they disclosed their cause of action. And this disclosure was sufficient to put the Trustee on notice that they might file a lawsuit.

### A. When the Todds Scheduled the Cause of Action, They Disclosed the Claim.

Defendants' argument that the Todds were required to disclose the Lawsuit presupposes that a lawsuit and the underlying cause of action are separate "claims." They are not.

6

"Claim" is a synonym for "cause of action," defined as "a group of operative facts giving rise to one or more bases for suing." [2] *Cause of Action, Black's Law Dictionary* (11th ed. 2019) ("after the crash, Aronson had a cause of action"). A "lawsuit"—also referred to as an "action," "case," or "cause"—is the court proceeding by which a party or parties seek to recover on their claim. *See Suit, Black's Law Dictionary* ("All these nouns . . . denote proceedings instituted for the purpose of enforcing a right or otherwise seeking justice." (quoting Bryan A. Garner, *Garner's Dictionary of Legal Usage* 862-63 (3d ed. 2011))).

As the Trustee recognizes, filing a lawsuit on a previously scheduled claim does not create a new "claim." *See* Tr's. Resp. to Mot. for Summ. J., Adv. ECF No. 41 at 2 (stating that "to the Trustee's thinking," the Lawsuit and the claim disclosed in the Amended Schedule A/B "are indistinguishable"). It follows that when the Todds scheduled a "contingent post petition medical malpractice case," they disclosed the "claim."

Defendants cite no case that compels a different conclusion. Where a chapter 13 debtor has filed a postpetition lawsuit based on a postpetition cause of action, the Fifth Circuit Court of Appeals has found a failure to disclose when the debtors did not disclose *any* litigation-related interest. *See Bias*, 766 F. App'x at *40 (debtor disclosed neither False Claims Act cause of action nor filing of lawsuit); *Fornesa v. Fifth Third Mortg. Co.*, 897 F.3d 624, 626-28 (5th Cir. 2018) (debtor disclosed neither wrongful foreclosure cause of action nor filing of two lawsuits); *Allen v. C&H Distribs., L.L.C.*, 813 F.3d 566, 570-72 (5th Cir. 2015) (debtors disclosed neither personal injury cause of action nor lawsuit); *Flugence v. Axis Surplus Ins. Co. (In re Flugence)*, 738 F.3d 126, 128 (5th Cir. 2013) (debtor disclosed neither personal injury cause of action nor lawsuit); *see*

---

[2] The Bankruptcy Code's definition of "claim" does not apply. *See* 11 U.S.C. § 101(5)(A), (B) (defining "claim" as a "right to payment" or a "right to an equitable remedy," impliedly belonging to a creditor); *see also Cantu v. Schmidt (In re Cantu)*, 784 F.3d 253, 259 (5th Cir. 2015) (distinguishing between "claim" as defined in § 101(5) and cause of action that is property of the estate under § 541).

7

*also In re Adams*, 481 B.R. 854, 855-57 (Bankr. N.D. Miss. 2012) (debtor disclosed neither cause of action arising out of mother's death nor wrongful death lawsuit).

Defendants correctly state that disclosure is an ongoing obligation, citing, among other decisions, *Casey v. Peco Foods, Inc.*, 297 B.R. 73, 76 (S.D. Miss. 2003) ("[B]ecause of the continuing nature of the duty to disclose, debtors are required to amend their financial statements if circumstances change."). *See* Adv. ECF No. 35 at 4. They argue that this duty required the Todds to amend their schedules when they filed the Lawsuit and that their failure to amend "misrepresented that the status of the [medical malpractice] case was unchanged when it had been []filed by another law firm, was pending, and was valued at more than $124,000." *Id.* (citing *Fornesa*, 897 F.3d at 628).

But Defendants' reliance on these cases is misplaced. In *Fornesa*, *Casey*, and others, it was the debtor's failure to disclose *any claim at all* that would have "'impliedly represented' to the bankruptcy court that [Debtor's] financial status was unchanged," *Fornesa*, 897 F.3d at 628 (quoting *Flugence*, 738 F.3d at 129). *See Casey*, 297 B.R. at 74 (chapter 7 debtor failed to disclose prepetition administrative EEOC charge and related "potential litigation"); s*ee also Love v. Tyson Foods, Inc.*, 677 F.3d 258, 260-61 (5th Cir. 2012) (chapter 13 debtor failed to disclose prepetition cause of action, postpetition EEOC charge, and postpetition lawsuit); *Superior Crewboats, Inc. v. Primary P&I Underwriters (In re Superior Crewboats)*, 374 F.3d 330, 333 (5th Cir. 2004) (chapter 13 debtors failed to schedule prepetition cause of action and postpetition lawsuit and on conversion to chapter 7 stated inaccurately at § 341 meeting that lawsuit was time barred); *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 202-03, 210 (5th Cir. 1999) (in chapter 11 case converted to chapter 7, debtor failed to schedule prepetition cause of action against individual who

8

allegedly caused debtor's bankruptcy and failed to specify in schedules that debt to that individual was disputed, contingent, or subject to setoff).

Besides, filing the Lawsuit did not change the Todds' financial status or the nature of their claim. The claim was scheduled as contingent and unliquidated. Am. Sch. A/B, Case ECF 61 at 6. No amount of its speculative proceeds could have been used to fund the Todds' plan. *See In re Milstein*, No. 13-17286, 2014 WL 3511526, at *3 (Bankr. D. Colo. July 15, 2014) ("Numerous courts have found that debtors who propose to fund their chapter 13 plans from a hoped for favorable litigation outcome cannot satisfy the feasibility requirement of § 1325(a)(6)."). And the claim remains contingent and unliquidated to this day.

Finally, Defendants rely—again, mistakenly—on *United States ex rel. Westbrook v. Navistar, Inc.*, No. 3:10-cv-1578, 2011 WL 13234903 (N.D. Tex. Dec. 20, 2011). Defendants highlight that the debtor there "failed to properly disclose [the] lawsuit on his bankruptcy schedule," Adv. ECF No. 35 at 5, and "failed to provide [the] trustee with [a] copy of [the] complaint," Adv. ECF No. 31 at 8. Defendants emphasize the district court's conclusion that "[the] trustee did not abandon [the] lawsuit because [the] trustee did not have 'full knowledge' of it." *Id.*

But Defendants omit relevant details, which the Fifth Circuit recounted in a related case, *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354 (5th Cir. 2014). First, the debtor scheduled a "potential" False Claims Act claim for an "unknown" amount when the draft complaint, which he disclosed to the United States shortly after filing bankruptcy, sought more than $12 billion in damages. *Id.* at 359, 363. And a "substantial percentage of that potential recovery" would have gone to the debtor as the qui tam relator. *Id.* at 363. Then, at the § 341 meeting, the debtor's attorney misleadingly stated that the claim as scheduled was "really not a claim that you have" and "you're not really a party to the lawsuit"—statements the debtor verbally affirmed. *Id.* The debtor

9

also inaccurately characterized himself as a "witness" in the case. *Id.* Those were the facts on which the Fifth Circuit found that the debtor's disclosure was "insufficient." *Id.* And those facts are completely unlike the ones here.

### B. Scheduling the Cause of Action Put the Trustee on Notice that the Todds Might File a Lawsuit.

"The purpose of the schedules is to give interested parties sufficient information to decide whether they want to engage in further inquiry." *Collier on Bankruptcy* ¶ 521.06 (Richard Levin & Henry J. Sommer eds., 16th ed.). The Todds' schedules fulfilled that purpose. *See* Adv. ECF No. 41 at 2 (Trustee's admission that "the malpractice claim was clearly listed in [the] Amended Schedules").

Quin and Radiology Associates correctly state that a debtor's schedules must be "as accurate as possible," Adv. ECF No. 31 at 7 (quoting *Coastal Plains*, 179 F.3d at 208). They point out that the Todds' schedules were inaccurate in claiming an exemption in a judgment before the Lawsuit was even filed. Adv. ECF No. 31 at 4-5. From this inaccuracy, they infer nefarious intent, arguing that by claiming a $20,000 exemption, the Todds sought to "deter[] interest from the Trustee" in a claim on which they would later seek more than $124,000 in damages. *Id.* No evidence supports this argument. Quin and Radiology Associates also argue that "[t]he bankruptcy schedules are not proof that these [the disclosed cause of action and the Lawsuit] are the same cases." ECF 35 at 4. This argument does not merit consideration, the Todds having disclosed only one cause of action and having filed only one lawsuit.

Schedules that are "as accurate as possible" are not necessarily error-free, as the Fifth Circuit implicitly recognized in *ASARCO, L.L.C. v. Montana Resources, Inc.*, 858 F.3d 949 (5th Cir. 2017) (affirming district court's decision to not apply judicial estoppel). There, the district court had focused on notice when it found that the claim, even if inaccurately scheduled, was

10

sufficiently disclosed. *See ASARCO, LLC v. Mont. Res., Inc.*, No. 1:12-cv-137, 2016 WL 6781556, at *10 (S.D. Tex. Mar. 3, 2016). The district court observed that "other courts have taken a more lenient approach to where a claim is listed in the schedules than to the absence of a claim from the schedules entirely." *Id.* It then found that while disclosure of a contractual right of reinstatement on Schedule G instead of Schedule B "may have been imperfect, it was sufficient to allow a trustee to investigate the claim." *Id.* Affirming, the Fifth Circuit accepted the district court's finding that "the disclosure of the interest, though scant, was sufficient." 858 F.3d at 958.

As in *ASARCO*, so also here—except the Todds' disclosure was not "scant." They disclosed the claim not only in the amended Schedule A/B but also by implication in the amended Schedule C, where they purported to claim an exemption in a judgment, albeit one that did not and might never exist. Their schedules were not error-free. But as in *ASARCO*, their imperfect disclosure was sufficient to put the Trustee on notice of the claim. *Accord Delaney v. Wal-Mart Stores, Inc.*, 408 F. Supp. 2d 240, 242-43 (N.D. Miss. 2005) (holding that chapter 13 debtor's scheduling "personal injury lawsuit" sufficiently put creditors on notice of employment discrimination claim).

## II. The Claim Was Abandoned.

"Abandonment" under the Bankruptcy Code is "the largely irrevocable removal of property from the estate." *Killebrew v. Brewer (In re Killebrew)*, 888 F.2d 1516, 1520 (5th Cir. 1989). In the Southern District of Mississippi, all property remains property of the chapter 13 estate until dismissal, discharge, or conversion. *See* Conf. Order, Case ECF No. 74 at 2; 11 U.S.C. § 1327(b) (providing that plan confirmation vests all property of the estate in the debtor "[e]xcept as otherwise provided in the plan or the order confirming the plan"). But property may be abandoned to the debtor before any of these events occur. *See* 11 U.S.C. § 554(a)-(b) (providing that either

trustee may abandon or court may order abandonment of "any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate"); *see also Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) ("Property abandoned under [§] 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed." (quoting 5 *Collier on Bankruptcy* ¶ 554.02[3] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008))).

At the close of the case, any property "not otherwise administered" is abandoned by operation of law—if the property was scheduled. 11 U.S.C. § 554(c). Abandonment under § 554(c) is called "technical" abandonment. *Norris v. Causey*, No. 14-1598, 2016 WL 3970985, at *9 (E.D. La. July 25, 2016) (citing 4 William L. Norton, Jr. & William L. Norton III, *Norton Bankr. L. & Prac. 3d* § 74:3 (2016)), *aff'd in part & remanded in part*, 869 F.3d 360 (5th Cir. 2017). If "a trustee's oversight" results in technical abandonment of an asset "worthy of administration," an "honest debtor" bears no responsibility. *Murray v. Nagy (In re Nagy)*, 432 B.R. 564, 568 (Bankr. M.D. La. 2010). Any property *not* scheduled remains property of the estate. 11 U.S.C. § 554(d); *Collier* ¶ 350.03 ("[A]ssets that are not properly disclosed on the schedules are not abandoned and remain property of the estate that can be administered if the case is reopened.").

The Todds properly scheduled their medical malpractice claim. *See supra* Part I. It follows that the claim was abandoned by operation of law under § 554(c) and therefore is not property of the estate. For this reason, contrary to the Trustee's argument, the bankruptcy estate is not entitled to any of the Lawsuit's proceeds, should the Todds prevail on their claim.

## ORDER

The Todds having sufficiently disclosed their state law cause of action in their amended bankruptcy schedules and the Lawsuit having therefore been abandoned from the bankruptcy

12

estate on the closing of the case, the Motion for Summary Judgment by Quin and Radiology Associates is **ORDERED DENIED**, and summary judgment in favor of the Todds is **ORDERED GRANTED**. A final judgment will issue. *See* Fed. R. Bankr. P. 7058.

*##END##*